UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH JOHNSTON,<br><br>                                    Plaintiff,<br><br>v.<br><br>RALPH DIAZ, et al.,<br><br>                                    Defendants. | Case No.:  19-cv-000616-AJB-BLM<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, (Doc. No. 23); AND**<br><br>**(2) DENYING PLAINTIFF'S MOTION TO STRIKE, (Doc. No. 32)** |

Presently before the Court is Jeremiah Johnston's ("Plaintiff") (1) motion for preliminary injunction, and (2) motion to strike late response to motion for preliminary injunction. (Doc. Nos. 23, 32.) Prison official Defendants opposed the motion for preliminary injunction. (Doc. No. 37.) For the reasons stated herein, the Court **DENIES** Plaintiff's motion for preliminary injunction, and **DENIES** Plaintiff's motion to strike.

## I.     BACKGROUND

Proceeding pro se and *in forma pauperis*, Plaintiff is a developmentally and physically disabled inmate incarcerated at the R.J. Donovan Correctional Facility ("RJD"). (First Amended Complaint ("FAC") ¶ 4.) Plaintiff's claims arise out of Defendants' implementation of an "integration" program, which created Non-Designated Programming Facilities ("NDPF"). Plaintiff claims these NDPFs "mixes sensitive needs and general

1

population inmates together under the pretext of adding rehabilitative programs for inmates." (*Id.* ¶ 11.) Plaintiff alleges that this integration program has resulted in "riots, violence and death." (*Id.*) He additionally asserts he was raped by his integrated "arbitrarily assigned" cellmate in C-yard. (*Id.* ¶ 16.) After he reported the rape, Plaintiff alleges he was temporarily rehoused in "punitive segregated confinement" on B-yard. (*Id.*) He thereafter refused to be transferred to A-yard on the advice of his treating psychologist and was assigned to B-yard, a Level III special needs yard facility. (*Id.*) Because of riots on other yards, B-yard units 8, 9, and 10 have had virtually no programming in the dayrooms and yards. (*Id.* ¶ 13.) And, all inmates in Plaintiff's building unit 9 have been on "unjustifiable lockdown" for at least 5 weeks because of the riots on the other yards. (*Id.* ¶ 14.)

## II.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). A party seeking a preliminary injunction must fulfill one of two standards, described by the Ninth Circuit as the "traditional" and "alternative" standards. *See Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional standard, a court may issue preliminary relief if it finds: (1) the moving party will probably prevail on the merits; (2) the moving party will suffer irreparable injury if the relief is denied; (3) the balance of the hardships favor the moving party; and (4) the public interest favors granting relief. *Id.* Under the alternative standard, the moving party may meet its burden by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions exist and the balance of hardships tips sharply in its favor. *See id.* This latter formulation represents two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *See Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ("PLRA"), which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of

2

the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Furthermore, the pendency of this action does not give the Court jurisdiction over prison officials in general. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 491–93 (2009); *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. *Summers*, 555 U.S. at 491−93; *Mayfield*, 599 F.3d at 969.

## III.   DISCUSSION

### A.   Plaintiff's Motion to Strike Defendants' Untimely Opposition

As a preliminary matter, Plaintiff moves to strike Defendants' untimely opposition to the motion for preliminary injunction. (Doc. No. 32.) However, Defendants filed an *ex parte* motion to modify the briefing schedule, explaining that Defendants were not served with the Court's order setting the briefing schedule on Plaintiff's motion for preliminary injunction. (Doc. No. 34.) Because Defendants' *ex parte* motion was granted by the Court, (Doc. No. 35), the Court will accordingly consider Defendants' opposition brief. *See Goodes v. Pac. Gas & Elec. Co.*, No. C 12-01667 SI, 2012 WL 2838832, at *1 (N.D. Cal. July 10, 2012) ("In the interest of deciding defendant's motion on its merits, the Court will consider plaintiffs' opposition."). As such, the Court **DENIES** Plaintiff's motion to strike Defendants' opposition.

### B.   Plaintiff's Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction to immediately enjoin, restrain, and order the California Department of Corrections and Rehabilitation ("CDCR") and RJD to "cease, desist, and abandon" the implementation of the integration program in all California prisons.[1] Plaintiff argues the implementation program is "currently being used on Plaintiff

---

[1] To the extent Plaintiff is requesting a preliminary injunction enjoining *all* California prisons, Plaintiff's request is overbroad, and may not be granted by the Court. *See* 18 U.S.C. § 3626(a)(1)(A) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a *particular plaintiff or plaintiffs*. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct

and his 'legal assistant' that have eliminated the protection and safety of approximately 22% of 137,000 prisoners of the State of California. . . ." (Doc. No. 23 at 1–2.) Plaintiff additionally asks for an injunction to prevent Defendants from transferring Plaintiff or his legal assistant to another prison, to segregated confinement, or otherwise punishing them for bringing this or any lawsuit. (*Id.* at 5.)

### 1. Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits.

The gravamen of Plaintiff's claim is that Defendants violated his constitutional rights under the Eighth Amendment because they implemented a program to integrate "special needs" inmates requiring protection, with other inmates in California's prisons, including RJD. (Doc. No. 23 at 4.) Plaintiff claims that this integration program resulted in him being raped by his cellmate, and general unsafe and violent conditions at RJD. (*Id.*) Plaintiff further claims that after he reported the rape, Defendants Lt. Rodriguez, D. Hough, S. Chat, and B. Jaime placed him in "punitive segregated confinement," where he was locked down 23 hours per day. (*Id.*) Defendants also allegedly interfered with his First Amendment right to file grievances by sending back his grievance unadjudicated. (*Id.* at 12.) Plaintiff also claims Defendants charged him with a disciplinary violation after he refused to move to A-yard.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). An inmate seeking to prove an Eighth Amendment violation based on deliberate indifference must objectively show that he was deprived of something sufficiently serious and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. *Thomas v. Ponder*, 611 F.3d 1144,

---

the violation of the Federal right.") (emphasis added). Thus, this Court will only focus on the analysis which pertains to RJD specifically.

1150 (9th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," the plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). This requires that the official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The court must consider whether the risk "was sufficiently 'obvious' to the prison officials that they must have been aware of the severity of the deprivation." *Thomas*, 611 F.3d at 1151. Deliberate indifference requires a showing of "more than a mere suspicion that an attack will occur." *Berg v. Klincheloe*, 794 F.2d 457, 459 (9th Cir. 1987).

First, Plaintiff has not shown a likelihood of success on his Eighth Amendment claim based on Defendants' implementation of the integration program. Plaintiff states that there has been violence, multiple riots, and unrest in RJD in addition to Folsom State Prison, Mule Creek State Prison, Chuckwalla State Prison, Tehachapi State Prison, and other penitentiary facilities. (Doc. No. 23 at 8.) These conditions, Plaintiff asserts, amount to cruel and unusual punishment under the Eighth Amendment. (*Id.*) However, there is compelling evidence demonstrating that the program was not implemented with "deliberate indifference" or with a "sufficiently culpable mind" necessary for a viable Eighth Amendment claim. In fact, the evidence shows the program was necessary to address the rapid growth of the sensitive-needs population at RJD, the increase in gang activity and violence, and the decrease in programming opportunities on the sensitive- needs yards. (*Id.* at 17.) Furthermore, CDCR implemented the program after a thorough process involving "various stakeholders, including lawyers for prisoners in class actions against CDCR, to address issues with CDCR's sensitive-needs population." (Doc. No. 37 at 16.) Accordingly, Plaintiff has likely failed to demonstrate deliberate indifference as to the integration program generally. *See Berg*, 794 F.2d at 460 ("The Supreme Court has stated that deference to the decisions of prison officials also extends to prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline.").

Second, Plaintiff is unlikely to establish an Eighth Amendment claim based on the alleged incident involving the rape of Plaintiff by his cellmate. Plaintiff argues that Defendants' integration program specifically resulted in him being raped by his cellmate. (Doc. No. 23 at 4.) However, the evidence shows Plaintiff and his cellmate were celled together a couple of months before RJD implemented integration for inmates. (Doc. No. 37 at 15.) And, Plaintiff cannot show that it was "sufficiently obvious" to Defendants that he would be raped if he was placed in an integrated facility. *See Berg*, 794 F.2d at 459 (noting that deliberate indifference requires a showing of "more than a mere suspicion that an attack will occur."). The record instead demonstrates that the case factors for Plaintiff and the cellmate were carefully evaluated before they were celled together. (Doc. No. 37-1 at ¶ 9.) Nothing in the case files made it apparent to Defendants that the two inmates could not be safely housed together. (*Id.*) They were not listed as enemies, and according to the cellmate's prison file, the cellmate was not violent or a sex offender, and he had not previously engaged in violence or sexual assault against cellmates. (*Id.*) Furthermore, once this incident was reported, Defendants promptly took remedial action, and placed Plaintiff in administrative segregation for his safety while the incident was being investigated. (*Id.* at ¶ 10.)

Thus, because Plaintiff has failed to show a likelihood of success at this juncture, this factor tips in favor of Defendants.

### 2. Plaintiff Has Not Shown Irreparable Injury

Next, Plaintiff has not made a sufficient showing of irreparable harm. A plaintiff seeking a preliminary injunction must establish a likelihood of irreparable harm in the absence of preliminary relief. *See Herb Reed Enterprises, LLC v. Florida Entm't Mgmt.*, Inc., 736 F.3d 1239, 1242 (9th Cir. 2013). "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Id.* at 21. A court may not rely on "unsupported and conclusory statements regarding harm [a plaintiff] might suffer." *Id.* at 19 (internal quotation marks omitted; emphasis in the original).

Plaintiff argues that a showing of a violation of his constitutional rights is sufficient

6

to establish irreparable injury. (Doc. No. 23 at 12.) However, as explained above, Plaintiff has not presented a likelihood of success as to his constitutional claims. But in any event, even if Plaintiff did establish a likelihood of success, Plaintiff still cannot show irreparable harm because Plaintiff is not currently housed in an integrated NDPF. Rather, since February 2018, Plaintiff has been housed in a level III sensitive needs yard, which is not an integrated facility.  (Doc. No. 37-1 at ¶ 12); *see Earl v. Diaz*, No. 119CV00712BAMPC, 2020 WL 1498161, at *2 (E.D. Cal. Mar. 10, 2020), report and recommendation adopted, No. 119CV00712AWIBAMPC, 2020 WL 1492911 (E.D. Cal. Mar. 27, 2020) ("However, the [] declaration does not demonstrate that Plaintiff himself has been, or is currently, assigned to a NDPF yard and faces imminent and irreparable harm.").

Accordingly, this factor too weighs in favor of Defendants.

### 3.      Plaintiff Has Not Demonstrated That The Balance of Equities Tips in His Favor or that an Injunction Would Be In The Public's Interest

Before issuing a preliminary injunction, courts must weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). Also, "[t]he public interest analysis for the issuance of a preliminary injunction requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted).

Here, Plaintiff asserts he "will suffer more without an injunction than prison officials will suffer if the injunction is granted" and "that it is always in the public's interest for government officials such as these Defendants to obey the Constitution and other laws." (Doc. No. 23 at 12.)  But contrary to Plaintiff's assertion, Plaintiff has not indicated that the balance of equities tips in his favor or that the injunction would be in the public's interest. "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their

7

judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). As discussed above, Plaintiff is not currently housed in an integrated NDPF. On the other hand, Defendants have asserted that the NDPF program was implemented to safely and effectively manage its prisons. Specifically, CDCR employed the NDPF program to "address the rapid growth of the SNY population, increased gang activity and violence on SNYs, and limitations on programming on SNYs." (Doc. No. 37 at 20.) Additionally, the general population facilities at RJD had "minimal overcrowding and a shortage of inmates to fill Prison Industry Authority and other job-training assignments." (*Id.*) Thus, in view of the Court's previous conclusion that Plaintiff has not established a likelihood of irreparable harm, the Court does not believe that the public interest demands preliminary injunctive relief. Rather, the Court finds that the public interest is best served, at this stage of the proceedings, by allowing Defendants to operate its NDPF program to safely address the conditions at RJD.

## C.    Plaintiff's Other Requests

Plaintiff additionally asks for an injunction to prevent Defendants from transferring Plaintiff or his legal assistant to another prison, to segregated confinement, or otherwise punishing them for bringing this or any lawsuit. (*Id.* at 5.) First, Plaintiff's request is improper because he is proceeding pro se, and Plaintiff's legal assistant is not a party to this action. *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself."). Secondly, this request must be denied because Plaintiff does not present any evidence showing that a transfer, segregated confinement, or retaliation is imminent or likely. *Winter*, 555 U.S. at 375–76 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

## IV.    CONCLUSION

In sum, the Court concludes Plaintiff has not made "a clear showing" that it is

entitled to the "extraordinary remedy" of an injunction at this stage of the proceedings. *Winter*, 555 U.S. at 22. Based on the foregoing, the Court **DENIES** Plaintiff's motion for a preliminary injunction, (Doc. No. 23), and **DENIES** Plaintiff's motion to strike Defendants' untimely opposition, (Doc. No. 32).

**IT IS SO ORDERED.**

Dated:  June 22, 2020

Hon. Anthony J. Battaglia
United States District Judge

19-cv-000616-AJB-BLM